## General Accident Life and Fire Assurance Corporation Ltd. v. Richardson.

(Decided February 19, 1914.)

### Appeal from Warren Circuit Court.

1. Insurance, Accident—Estoppel, Waiver, or Agreement Affecting Right to Avoid or Forfeit Policy—Insertion of False Answers In Application by Agent.—The rule in this State is that where an insurance agent with full knowledge of the facts, writes in the

application answers which are untrue, or so incomplete, or so worded as to create a false impression, the company is estopped, in the absence of fraud on the part of the insured, from asserting or relying upon such misrepresentations.

2.   Insurance, Accident—Actions on Policies—Admissibility of Evidence.—In an action on an accident policy, where the defense is based partly on the claim of an alleged tubercular infection existing at the time of and long 'before the injury, it was error to permit a physician who had caused an examination to be made of pus from an abscess on insured's body, to state what the report was concerning the germs found in such pus, such evidence being purely hearsay.

GUY H. HERDMAN, W. R. GARDNER for appellant.

SIMS & RODES for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

This is an appeal from a judgment of the Warren Circuit Court in favor of appellee, Zelmer E. Richardson, against appellant, General Accident, Life & Fire Assurance Corporation, Ltd., in the sum of two thousand four hundred dollars, for twenty-four months' total disability under the following clause of an accident insurance policy: "At the rate of one hundred dollars per month for a period not exceeding twenty-four consecutive months, against total loss of time resulting directly or independently of all other causes, from bodily injuries through external, violent and accidental means, and which wholly and continuously from date of accident, disables and prevents the assured from performing every duty pertaining to any business or occupation."

The plaintiff claimed that he was accidentally injured on the night of December 30, 1910, at Bowling Green, about 10 P. M., by falling in a passenger coach from which he was preparing to alight at the depot, and a heavy typewriter falling upon his back or buttock, to which weight and jar was added that a fellow-passenger who fell on the typewriter while it was upon plaintiff; and that the severe injuries thereby sustained directly produced the total disability upon which his claim was based.

The insurance company defended upon the ground (1) that the plaintiff did not receive the injury alleged by him; (2) that the disability complained of did not result directly or independently of all other causes, from

bodily injuries effected through external, violent and accidental means, nor was the plaintiff wholly disabled therefrom; but that his disability was caused wholly or in part, directly and indirectly by his previous diseased condition; that at the time of the alleged injury and for five years prior thereto, plaintiff was suffering with tuberculosis of the bones, and that this disease and not the injury, caused the disability complained of; and (3) upon the ground of false and material representations contained in. the application upon which the contract of insurance was issued. The misrepresentations charged were made in answer to questions in said application, as follows:

"I have not had any medical or surgical treatment during the past five years except as herein stated: Bruise on ribs in 1905. Minor operation for bruise on hip in 1907. Recovery complete. I am not subject to, do not now have, nor have I ever had fits of any kind, vertigo, hernia, paralysis, rheumatism( sciatica, lumbago, nor any disease or infirmity, mental, physical, nervous, venereal, chronic or inherited, except as herein stated: No exceptions."

1. Appellant first insists that it was shown by uncontradicted evidence that these representations were false and material; and that upon this ground the court erred in denying its motion for peremptory instruction.

Upon this issue, plaintiff testified, in substance, that in June, 1905, while riding a horse sixteen hands high, he was thrown to the ground, receiving an injury to one of his ribs; that six weeks thereafter, he consulted Dr. Cain, who examined the bruised place, pronounced it a tumor, performed an operation, opening and draining the place, and discharged him from the hospital in four days.

He further testified that in November of that same year, this injury to this rib gave him some further trouble; that he thereupon consulted Dr. F. D. Cartwright, who dressed and attended to it occasionally during a period of four or five months. Later, he went to Dr. Blackburn, who cut into the rib, scraped the place, and in the course of six days thereafter, it was entirely healed and well, and gave him no further trouble.

Plaintiff further testified that in October, 1906, while riding in a wagon, he received a severe bruise on his left hip; that although this gave him considerable pain, he went to Florida to teach school; but, while there, his suf-

fering became so acute that he was compelled to consult a physician, who opened the place and treated it.

He returned to Bowling Green in the spring of 1907; and thereupon again placed himself under the care of Dr. Blackburn, who treated the hip until about June 10, 1908, but did not discharge him as entirely cured until May, 1909. Thereafter he gradually regained his shattered strength, vigor and weight. He testified that in November, 1910, when the policy was issued, and on December 30, 1910, when he received the injury upon which this action is based, he was sound and well, and as strong as he ever was, weighed 195 pounds; and had had no illness from June, 1907, until he was so injured.

Upon this testimony of the plaintiff himself, the appellant contends that the falsity and materiality of the representations heretofore mentioned have been made manifest.

But, it was also in evidence that appellee, while in North Carolina, in November, 1907, was solicited by appellant's agent; and that there the application for this insurance was executed. And, the agent who effected the insurance testified that he wrote the answers in the application literally as given to him by appellee, while appellee testified that he informed the agent of the injuries and treatment heretofore mentioned, as fully as he had testified concerning them upon the trial of the case.

The rule in this State is that where an insurance agent with full knowledge of the facts, writes in the application untrue answers to the questions therein propounded, the company is estopped from asserting or relying upon such misrepresentations in the absence of fraud or bad faith upon the part of the insured.

Under the state of fact here presented, it was for the jury to determine whether appellee made full disclosure to the appellant's agent, and whether, without fraud or bad faith upon the part of appellee, the agent of the appellant, with such knowledge of the facts, wrote in the application answers that were false, or so incomplete or so worded as to create a false impression in respect thereof.

The court instructed the jury that if the said answers were false, the plaintiff could not recover. Under the testimony above mentioned, this instruction was more favorable to appellant than it was entitled to; for, even if the said answers were false, if, without fraud on the part of

appellee, the agent failed to write in the application the truth after it had been stated to him by appellee, the plaintiff would not be barred from a recovery thereby because the company would be thereby estopped from asserting and relying upon such misrepresentations.

2. Appellant also contends that all of the evidence showed that the disability of appellee was due solely to disease, and not to the injury claimed to have been received by appellee upon the train; and that upon this ground, it was error for the court to refuse to grant its motion for a peremptory instruction.

As has been seen, this injury was received, as appellee testified, about 10 P. M., on December 30, 1910. He further stated that he met Dr. Blackburn as he stepped off the train; that he told the doctor about the injury which he had just received; and made an engagement to see the doctor at his office the following morning; that the next day, about 2 P. M., he went to the office of Dr. Blackburn, who thereupon examined him, and found a soft place on his hip. This, the doctor opened either that day or the next; and on January 3, following, Dr. Blackburn operated on appellee, at which time the abscess which had formed was curetted. Dr. Blackburn testified that between the time of the first examination and the time of the operation, the soft place on appellee's hip had enlarged from the size of a quarter to the size of a dollar; and that the operation developed that there was a fistulous tract about three inches long running superficially down from the point first examined.

It is appellant's contention that an abscess of this character could not have formed in the interval between the time of the injury and the time of the operation; that this abscess had been formed by a process of slow growth; that it possessed the infallible indications of a tubercular origin; and that it could not have been caused by the injury which appellee claimed to have received on the train, and that therefore his disability was caused by and due solely and wholly to disease.

The physician who treated appellee and performed the operation on January 3 testified that the abscess was of non-tubercular origin; while on the other hand, a number of experts testified for appellant, in response to hypothetical questions, that the abscess was of tubercular origin, and could not have been formed within the time mentioned. A physician who assisted in the operation on

January 3, testified that in his opinion, the condition disclosed by that operation had existed before the date of the accident claimed to have been received by appellee; and that it was not caused solely by that injury. Appellant contends that the case should not have been permitted to go to the jury upon the testimony of the one physician alone, who testified for appellee, because as appellant insists his testimony is contradicted by all physical laws and by the overwhelming testimony of the other witnesses; that the testimony of this physician who testified for appellee was contrary to reason, and did not create a conflict of evidence, and bring the case within the scintilla rule. But, in this contention, we are unable to concur. The one physician who testified for appellee performed the operation; he had examined the appellee on the day after the injury was received; and he was certainly possessed of definite information concerning the character, appearance and nature of the abscess, while with the one exception, those who testified for appellant based their opinion and testimony only upon hypothetical questions.

It would prolong this opinion to undue length to review all the testimony in respect to this contention as to the character of the abscess in question. There was enough evidence on appellee's behalf to require the submission of that issue to the jury; and the court properly overruled the motion of appellant for peremptory instruction.

3. Appellee was permitted to prove by a physician who had treated him in 1906 and 1907, that he, the said physician, had caused an examination to be made of some of the pus derived from the abscess then under treatment; and that the State Board of Health reported the finding therein of the germ known as staphlo-coccus, a non-tubercular germ. To this testimony appellant objected at the time, and of it now complains. This evidence, being purely hearsay, should not have been permitted to go to the jury. But in view of the testimony developed by appellant proving that staphlo-coccus and tubercular germs may exist together, and of the further fact that the physician stated other grounds for his diagnosis of the nature of the abscess which appellee claimed was caused by the injury received on the train, and in view of the further fact that appellee showed an apparently complete recovery after the time of the examina-

tion of the pus in question, we do not think that the appellant's substantial rights have been prejudiced by this incompetent testimony. Masonic Life Association of Western New York v. Robinson, 149 Ky., 80.

4.  Appellant also complains of Instruction No. 1. By this instruction, the jury were told that if they believed from the evidence that the plaintiff was injured in or about his hip through external, violent and accidental means; and that the plaintiff was thereby wholly and continuously disabled and prevented from performing substantially every duty pertaining to his business; but that said injury and disability resulted directly and approximately and independently of all other direct and proximate causes, in such loss of time, they should find for the plaintiff.

As has been seen, the policy insured appellee against loss "resulting directly or independently of all other causes, from bodily injuries effected through external, violent and accidental means;" and not independently of all other direct and proximate causes.

Appellant insists that even if plaintiff had, as it contends he had a tubercular disease, and was in such physical condition that the slightest bruise would result in disability still, unless such diseased condition was equally as direct and proximate as the injury, in causing the disability and loss of time, the plaintiff could recover under this instruction; while under the terms of the policy, the loss for which appellee could recover is such as results directly and independently of all other causes, whether direct or indirect; and that, therefore, the instruction was erroneous.

But, Instruction No. 10, which was given upon motion of appellant, reads as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff's disability for which indemnity is asked herein, was caused directly or indirectly, wholly or in part, from any bodily defect, disease or infirmity of plaintiff, they should find for the defendant."

While Instruction No. 1 is too general in form, and is properly subject to the criticism above indicated, still we think Instruction No. 10 cured the defect in No. 1, for it directed the jury to find for defendant unless the disability was caused solely by the injury claimed by appellee.

It will also be noted that Instruction No. 1 is to be treated in connection with Instruction No. 3, which de-

fined the terms "direct and proximate cause,' to be ,'such as directly produce, or contribute to produce the injury or disability complained of, either in whole or in part, and of which, such injury or disability is the natural and probable consequence."

5. Appellant also complains of Instruction No. 2 which charged the jury that if, at the time of the issuance of the policy, and at the time of the injury of appellee, he was not afflicted with any disease, and had no tubercular infection, of the ribs, hip or body; and if they should further believe as in Instruction No. 1, they should find for plaintiff.

The complaint as to this instruction is based upon the elimination of appellee's physical condition prior to the times mentioned therein; and upon the claim that by this instruction appellant was denied the right to avail itself of its claim of false and material representations made by apellee in the application for the insurance. But, in Instruction No. 9, as has been heretofore noticed, the jury were informed that they should find for the defendant if they believed from the evidence that the answers in question were false.

Upon the whole, we find no error in the record prejudicial to the substantial rights of the appellant.

The judgment, therefore, is affirmed.